On Motion for Clarification

EMAS, J.
Upon the State’s motion for clarification, we withdraw our previous opinion and substitute the following:
Defendant Garrick John appeals the trial court’s order summarily denying his motion for postconviction relief based upon newly-discovered evidence which he asserts establishes his actual innocence. We affirm.
In 1994, Garrick John was charged with fourteen felonies: six counts of armed robbery, six counts of kidnapping with a weapon, one count of armed burglary with an assault or battery, and one count of aggravated battery. The crimes occurred during a home invasion robbery in December 1993. In 1995, following a jury trial, John was found guilty as charged, and was sentenced to concurrent life sentences on all counts (with a three-year minimum mandatory) except for the aggravated battery (for which he was sentenced concurrently to fifteen years in state prison).
John was unsuccessful in his direct appeal, which was affirmed in 1997. He thereafter filed several postconviction claims attacking both his convictions and sentences, which were eventually denied on their merits and affirmed on appeal.
In 2010, Garrick John filed a successive motion for postconviction relief, asserting that he had newly-discovered evidence establishing his actual innocence. This evidence consisted of a December 10, 2009 affidavit from his half-brother, Gabriel John, who averred that he (Gabriel John) and another individual (Glen Jones) were the ones who committed these crimes sixteen years ago in 1993, and that Garrick John did not participate in the crimes for which he was charged, prosecuted and convicted.
The trial court denied the motion without an evidentiary hearing, determining that this evidence was not “of such a nature that it would probably produce an acquittal on retrial.” Jones v. State, 709 So.2d 512, 521 (Fla.1998).
To prevail on a motion for postcon-viction relief premised upon newly-discovered evidence, the “newly-discovered evidence must be of such a nature that it would probably produce an acquittal on retrial.” Id. Newly-discovered evidence satisfies this requirement if it “weakens the case against [the defendant] so as to give rise to a reasonable doubt as to his culpability.” Id. at 526.[1]
*1259 Once it has been determined that the defendant properly alleged the existence of newly-discovered evidence, an evi-dentiary hearing is ordinarily required so the trial court may properly weigh and evaluate both the newly-discovered evidence and the evidence which was introduced at the trial. However, motions for postconviction relief must be evaluated on a case-by-case basis, and an evidentiary hearing is not required in every case. See e.g., Poff v. State, 41 So.3d 1062 (Fla. Bd DCA 2010); Williams v. State, 876 So.2d 1234 (Fla. 4th DCA 2004); Hough v. State, 679 So.2d 1300 (Fla. 5th DCA 1996). This case presents just such a circumstance. Given the overwhelming nature of the evidence against Garrick John; the history of Gabriel John’s involvement in this case; the circumstances surrounding Gabriel John’s affidavit, provided sixteen years after the crimes and fourteen years after the trial; and the trial court’s thorough and thoughtful analysis of both the newly-discovered evidence and evidence presented at trial, together with the other record evidence in the case (extensive portions of which were incorporated by attachments to the trial court’s order), we hold that the trial court did not abuse its discretion in summarily denying the motion upon a finding that the record conclusively established defendant could not meet the “probably produce an acquittal on retrial” requirement of Jones.
Some of the rather unique circumstances which support the trial court’s determination include the following:
1. Although Gabriel John was not formally charged in the case, there was substantial evidence he participated in the home invasion robbery, and the State’s theory throughout Garrick John’s trial was that Garrick and Gabriel John committed this home invasion robbery. Gabriel John did not testify for the State or defense at his half-brother’s trial. However, Garrick John had other pending criminal cases the State continued to prosecute following Garrick John’s 1995 conviction in this case. In 1997, Gabriel John was subpoenaed to appear for a deposition in one of those other pending cases.[2] During that deposition, Gabriel John gave sworn testimony concerning this home invasion robbery. Gabriel John testified in his 1997 deposition that:
a. Gabriel and Garrick together committed this home invasion robbery in 1993;
b. Gabriel and Garrick arrived at the garage of the house, where some of the victims were working on a car;
c. Gabriel and Garrick were both carrying guns and Gabriel held the victims at gunpoint in the garage while Garrick went into the house to secure the house and look for other people;
d. Eventually Gabriel and Garrick brought all the victims inside and into one room of the house;
e. Gabriel and Garrick searched the house and stripped the victims of all their jewelry and money. Gabriel and Garrick were looking for drugs but the victims would not tell them where the drugs were. Eventually, one of the victims was taken down to the basement, where Gabriel plugged in an iron, and when the iron was heated up Gabriel took the iron and burned one of the victims on the leg. At that point, Garrick told Gabriel to stop and to not burn the victim any more.
2. Gabriel John’s affidavit came sixteen years after the home invasion robbery was *1260 committed, fourteen years after Garrick John was convicted, and twelve years after Gabriel John swore under oath in deposition that he and Garrick John together committed the fourteen crimes for which Garrick John was convicted and sentenced.
3. At the 1995 home invasion robbery trial, seven of the victims positively identified Garrick John as one of the two perpetrators of the home invasion robbery. The robbery took place over a substantial period of time during which each of these victims had a significant opportunity to observe the defendant.
4. The court reviewed photographs of both Garrick John and Gabriel John (which are part of the record attachments) and determined that the two of them did not look alike during the relevant time period.[3] Even defendant’s former trial counsel acknowledged there were distinct differences in Garrick and Gabriel John’s physical appearance and build at the time of the crimes, adding: “They look different. There [were] not a lot of brotherly similarities between the two.”[4]
5. Gabriel John has numerous prior felony convictions which could be used to impeach him if he were to testify at a new trial.[5]
6. Garrick John was linked to some of the property stolen during the criminal episode: jewelry was recovered from Marie Georges, the mother of Garrick John’s child. Ms. Georges was wearing the jewelry during an encounter with the police two months following the home invasion robbery. The jewelry was retrieved and later identified by two of the victims as property taken from them by the perpetrators in the course of the home invasion robbery.
Police conducted a search of Ms. Georges’ apartment, and discovered an automatic weapon on a shelf in the bedroom closet. Two victims testified that this was the very same gun used by the defendant in the home invasion robbery. Two other victims testified that it looked like the same gun used by the defendant, but could not say it was the very same weapon.
7. Police also conducted a search of Garrick John’s apartment and discovered a phone and phone base charger taken from the home during the robbery. Finally, police found, in a suitcase belonging to defendant and kept at his apartment, a membership card belonging to one of the victims of the home invasion robbery.[6]
*1261 Thus, while Gabriel John did not testify at his half-brother’s trial, the newly-discovered nature of this evidence results from the “recantation”[7] of his 1997 deposition testimony in which he swore under oath that he and his brother together committed the crimes for which Garrick John was convicted and sentenced. Recanted testimony is “exceedingly unreliable,” Bell v. State, 90 So.2d 704, 704 (Fla.1956), and viewed with great suspicion. Armstrong v. State, 642 So.2d 730 (Fla.1994). A trial court should grant relief based upon recanted testimony only if the court is satisfied that such testimony is true. Id.; Archer v. State, 934 So.2d 1187 (Fla.2006).
The trial court’s order, and the State’s pleading in response to the defendant’s motion, provides an extensive analysis of the record, including specific portions of the trial testimony of the victims and other witnesses, and an evaluation of Gabriel John’s affidavit. The order discusses, refers to and attaches more than 500 pages of record excerpts it evaluated and relied upon in its denial of the motion without an evidentiary hearing. Although an eviden-tiary hearing is generally required, it is not always required and we cannot say that the trial court abused its discretion in denying defendant’s claim without an evi-dentiary hearing under these circumstances.
Affirmed.

. Generally, a motion for postconviction relief may not be filed more than two years after the judgment and sentence become final. See Fla. R. Crim. P. 3.850(b)(1). An exception is made, however, if the motion alleges that
the facts on which the claim were predicated were unknown to the movant or the movant's attorney and could not have been ascertained by the exercise of due diligence, and the claim is made within the 2 years of the time the new facts were or could have been discovered with the exercise of due diligence....

Id.

Gabriel John alleges in his affidavit that he did not come forward earlier "because of my Fifth Amendment Right against self incrimination, and due to my personal animosity against [Garrick] over the years." The trial court did not determine whether these allegations were legally sufficient to meet the due diligence requirement for an otherwise time-barred claim. Given our disposition of this case, we decline to reach this issue as well.

. The State conferred immunity to Gabriel John, and in exchange for his truthful testimony regarding this home invasion robbery, the State agreed he would not be charged in this case.

. This has limited relevance, given the fact that the State contended at trial (and Gabriel John had confirmed in his 1997 deposition) that Garrick and Gabriel John were co-participants in the home invasion robbery. Gabriel John now contends that it was not Garrick, but another individual (Glen Jones) who participated with Gabriel in the 1993 home invasion robbery. However, the defendant argues, in portions of his motion, that the victims in the case mistakenly identified the defendant for his half-brother, Gabriel. Because this issue was raised by defendant, the differences in appearance between Gabriel and Garrick John were relevant and were properly addressed by the trial court.

. Defendant's former trial counsel testified at evidentiary hearings held on a prior postcon-viction motion filed by defendant.

. In his 1997 deposition, Gabriel John discussed his extensive criminal history, which included convictions for armed robberies, armed kidnappings, armed burglaries, armed carjacking, and aggravated battery with a firearm. He was unable to testify with certainty how many felony convictions he had.

. The defendant and Ms. Georges had each given police written consent to search their respective apartments. In addition to the victim’s membership card, the suitcase contained defendant’s social security card, passport and checkbook, as well as a power of attorney authorizing Ms. Georges to act on defendant’s behalf.

. Although we characterize this affidavit as recanted testimony (given Gabriel John’s acknowledgment that his 1997 deposition testimony was perjurious), it is important to note that, at least in one respect, it is not traditional recanted testimony: typically, recanted testimony not only strengthens the defendant’s case, but weakens the State’s original case, since a witness who recants would not be testifying for the State at a new trial and would instead be testifying for the defense. Here, by contrast, there is no "weakening” of the State’s original case because Gabriel John did not testify as a State witness at the trial. See Tompkins v. State, 994 So.2d 1072, 1087 (Fla.2008).